Fred MELOF, et al., Plaintiffs,

v.

Guy HUNT, et al., Defendants.

Civ. A. No. 89–T–379–N.

United States District Court,
M.D. Alabama, N.D.

July 13, 1989.

William J. Baxley, Joel E. Dillard, Birmingham, Ala., Jerrilee P. Sutherlin, James P. Smith, Smith and Waldrop, Huntsville, Ala., for plaintiffs.

Mark D. Griffin, Ron Bowden, Asst. Attys. Gen., Dept. of Revenue, State of Alabama, Montgomery, Ala., for defendants Hunt & Sizemore.

Stephen N. Dodd, Asst. Atty. Gen., Office of Atty. Gen., Alabama State House, Montgomery, Ala., for defendant Wallace.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This lawsuit, filed in the aftermath of the Supreme Court's decision in *Davis v. Michigan Department of Treasury,* —— U.S. ——, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), contests the manner in which the State of Alabama taxes retirement income. The plaintiffs, who receive retirement benefits, challenge the fact that the state wholly or partially exempts certain benefits while completely taxing others. The plaintiffs contend that the Alabama method of taxing retirement benefits violates the intergovernmental immunity doctrine, as limited and expressed by 4 U.S.C.A. § 111, and the equal protection and due process clauses of the fourteenth amendment, as enforced by 42 U.S.C.A. § 1983; they seek a declaration finding that Alabama's statutory taxation scheme is illegal, an injunction prohibiting the future collection of pensioner income, and an order mandating repayment of taxes illegally collected during the years 1985–1988.[1] The plaintiffs have named as defendants the Governor of Alabama, the State Treasurer, and the State Commissioner of Revenue. This court's jurisdiction is invoked pursuant to 28 U.S.C.A. § 1331.

Presently before the court is the defendants' motion to dismiss. In their motion the defendants argue that the plaintiffs' action is barred and that the relief sought must be obtained in state court. For the reasons that follow, the court concludes that this action should be dismissed, albeit without prejudice.

### I.

■ The law is now settled that, with but one important exception, the eleventh amendment bars suits by individuals against a state without the state's consent. The exception is that a suit against an officer of a state directing that officer to

---

1. In *Davis,* the Supreme Court struck down, as violating 4 U.S.C.A. § 111, a Michigan statute that differentiated between retirement income received by retired state and local government employees and that received by retired federal employees. The plaintiffs rely on *Davis* to the extent that Alabama's personal income tax scheme discriminates against retired federal employees. For example, plaintiffs allege that Alabama fully exempts benefits received from the State Teachers Retirement System and the State Employees Retirement System, but only partially exempts federal military retirement benefits and offers no exemption at all for federal civil service retirement benefits.

Plaintiffs rely on the equal protection and due process clauses to the extent that Alabama's personal income tax scheme discriminates among other types of pensioners.

cease from acting in an unconstitutional manner is not barred. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This exception is, however, limited to instances in which plaintiffs seek prospective injunctive relief; claims for retrospective relief remain barred. *See Edelman v. Jordan*, 415 U.S. 651, 668–69, 677, 94 S.Ct. 1347, 1358–59, 1362, 39 L.Ed.2d 662 (1974).

In recognition of the above exception, the plaintiffs seek relief from state officials but not from the state. However, the court must still determine whether the relief sought from the state officials falls within the allowable prospective injunctive relief. According to the plaintiffs, they seek "a declaratory judgment as to the illegality or unconstitutionality of Alabama's statutory taxation scheme and a permanent injunction barring the future collection of taxes on pension income ... [and] a recovery of the taxes that were illegally collected for the years 1985, 1986, 1987 and 1988." Plaintiffs' Brief at 1.

While the first two forms of relief—for a declaratory judgment and a permanent injunction—clearly within the pale of prospective relief, the same cannot be said for their request for disgorgement of illegally collected taxes. Such relief runs contrary to the Supreme Court's holdings in *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Ford Motor Co.*, the plaintiff sought a refund for gross income taxes collected by the state allegedly in violation of the United States Constitution. Although the plaintiff sued only various state officials, the Supreme Court, noting that the plaintiff's claim was for a "refund" and not for imposition of personal liability on the individual defendants for sums illegally exacted, concluded that the suit was, in reality, a suit against the state. Reasoning that "when the action is in essence one for the recovery of money from the state, the state is

the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants," 323 U.S. at 464, 65 S.Ct. at 350, the Court held that the eleventh amendment precluded the claim.

In *Edelman v. Jordan*, the Supreme Court reaffirmed its holding in *Ford Motor Co.* In *Edelman*, the district court had entered an order requiring state officials who administered a state welfare program to pay individual class members benefits that had been wrongfully withheld prior to the date of the injunction. In affirming the district court's order, the court of appeals treated the monetary award as "equitable restitution" that therefore fell outside the eleventh amendment's proscription. *See Jordan v. Weaver*, 472 F.2d 985, 990–994 (7th Cir.1973). The Supreme Court rejected this distinction, holding that the order required an expenditure of state funds in contravention of the eleventh amendment's mandate. In reaching this conclusion, the Court reaffirmed that

> a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, *Ex parte Young, supra,* and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury, supra.*

415 U.S. at 677, 94 S.Ct. at 1362.

Although the plaintiffs have sued the defendants in both their individual and official capacities, the monetary relief sought is for a refund of allegedly illegally collected taxes. Plaintiffs' Complaint, V.C. Were the court to order such relief, it would be requiring Alabama to reimburse the plaintiffs and expend itself on the public treasury since the money to reimburse the plaintiffs would come from the Alabama treasury. *See Silver v. Baggiano*, 804 F.2d 1211, 1214 (11th Cir.1986). As held in *Ford Motor Co.*, such an order would violate the eleventh amendment.[2]

**2.** There are no allegations in the complaint that would allow for the imposition of personal liability on the defendants. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,

101 & n. 11, 104 S.Ct. 900, 908–09 & n. 11, 79 L.Ed.2d 67 (1984) (discussing proof, i.e., that state officials were acting *ultra vires* their authority, that will permit a suit to proceed with-

## II.

As to the plaintiffs' claims seeking prospective relief, the court finds that, while such claims do fall outside the eleventh amendment's bar, they are still precluded by the interrelated doctrines of comity as constitutionally established by *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), and as statutorily set forth in the Tax Injunction Act, 28 U.S.C.A. § 1341.[3] The basic principle underlying the doctrines is that, with rare exceptions, a federal court should not interfere with a state's manner of collecting taxes—the primary source of funding for a state's continued operations—unless the court is convinced that the state does not offer to the plaintiffs state remedies that are "plain, speedy and efficient."[4] § 1341. "The scrupulous regard for the rightful independence of state governments which should at all time actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief be denied in every case where the asserted federal right may be preserved without it." *Fair Assessment*, 454 U.S. at 108, 102 S.Ct. at 182 (*quoting Matthews v. Rodgers*, 284 U.S. 521, 525, 52

S.Ct. 217, 219, 76 L.Ed. 447 (1932)) (footnote omitted).

### A.

A state remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise her constitutional objections to the tax. *California v. Grace Brethren Church*, 457 U.S. 393, 411–12 & n. 26, 102 S.Ct. 2498, 2509 & n. 26, 73 L.Ed.2d 93 (1982). Alabama provides several means by which a taxpayer can raise the constitutional challenges the plaintiffs seek to make in this court. The court is therefore convinced that these provisions are sufficient to conclude that the plaintiffs must bring their challenges in state, rather than federal, court.

### 1.

*The Protest Statute, 1975 Ala. Code § 40–1–11:* Section 40–1–11 of the 1975 Alabama Code provides that a taxpayer who claims that a tax is excessive or illegal may pay the tax under protest. Should the taxpayer invoke this provision, she then has 60 days in which to commence

out violating the eleventh amendment's proscriptions); *Silver v. Baggiano*, 804 F.2d at 1214.

To the extent that the plaintiffs suggest that this court could exercise some form of pendent jurisdiction to rule as a matter of state law that refunds must be forthcoming, the eleventh amendment again precludes an order of such relief. *Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 919 (eleventh amendment precludes federal courts from ordering state officials to act in accordance with state law); *Silver v. Baggiano*, 804 F.2d at 1213.

3. The Tax Injunction Act provides that "The district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

As the Eleventh Circuit noted in *Williams v. City of Dothan*, 745 F.2d 1406, 1411 n. 6 (11th Cir.1984), the Supreme Court has invoked notions of comity, rather than rely merely upon the Tax Injunction Act, when the relief sought was something other than injunctive relief. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (invoking principles of federalism to hold that federal court should refuse to grant declaratory

judgment). Since *Great Lakes* was decided, however, the Supreme Court has extended the reach of the Tax Injunction Act to claims for declaratory relief. *See California v. Grace Brethren's Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982). Consequently, given that all of the relief is within the Tax Injunction Act's scope, there may be some question as to whether considerations of comity are appropriate. This issue could, in some cases, be of importance insomuch as the Supreme Court has intimated that notions of comity may bar federal court interference in state laws even where the Tax Injunction Act would not. *See Rosewell v. LaSalle National Bank*, 450 U.S. 503, 525–26 n. 33, 101 S.Ct. 1221, 1235 n. 33, 67 L.Ed.2d 464 (1981). Under the facts of this case, however, the court need not address this question, but instead focuses its attention upon the Tax Injunction Act's more limited reach.

4. Under the comity doctrine, the remedy must be "plain, adequate and complete." *Fair Assessment*, 454 U.S. at 116 & n. 8, 102 S.Ct. at 186 & n. 8. The differences in wording between the two standards are superfluous; for all practical purposes, the test is the same. *Williams v. City of Dothan*, 745 F.2d at 1411 n. 6.

a judicial proceeding to consider the challenge's merits. In that proceeding, she may raise a myriad of factual and legal contentions, including a claim that the tax is unconstitutional under federal law. *Cf. American Cast Iron Pipe Co. v. Boswell*, 350 So.2d 438 (Ala.1977) (considering commerce clause challenge raised after sales tax paid under protest); *Rabren v. Pullman Co.*, 287 Ala. 623, 254 So.2d 324 (1971) (upholding commerce clause challenge to license tax paid under protest); *Hamm v. Boeing Co.*, 283 Ala. 310, 216 So.2d 288 (1968) (addressing challenge that sales tax paid under protest violated doctrine of sovereign immunity), *appeal dism'd*, 394 U.S. 320, 89 S.Ct. 1194, 22 L.Ed.2d 308 (1969). Moreover, should a tax protest challenging the constitutionality of state tax statutes be unsuccessful in the state court system, the taxpayer may always petition the United States Supreme Court for review of the state court's determinations. *See, e.g., Exxon Corp. v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983), *aff'g in part and rev'g in part* 404 So.2d 1 (Ala.1981); *Southern Railway Co. v. Greene*, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536 (1910), *rev'g* 160 Ala. 396, 49 So. 404 (1909).

During the pendency of a tax protest challenge, the state is required to place the contested monies in an account separate from other taxes collected, and may not disburse those funds until a judicial determination has been made as to the taxpayer's challenge, unless the taxpayer abandons the legal action. 1975 Ala.Code § 40-1-12. The contested money will be returned to the taxpayer should the challenge prove successful; however, the individual taxpayer will not receive any interest that might have accrued during the pendency of the proceeding. *Glass v. Prudential Insurance Co. of America*, 246 Ala. 579, 22 So.2d 13, 19 (1945).

The plaintiffs concede that this remedy is available to them for their utilization with regards to their 1989 tax payments, but contend that this remedy is insufficient because it cannot be used to obtain taxes paid in earlier years. In making this argument, the plaintiffs ignore the fact, as explained above, that the eleventh amendment bars this court from awarding such retrospective relief; were the plaintiffs to be completely successful, the relief from this court would be limited, for the most part, to a declaration that the current tax scheme is unconstitutional and an injunction prohibiting further taxation based on current law. Under the circumstances, therefore, the fact that the plaintiffs cannot obtain refunds from past years under § 40-1-11 is of no consequence to the court's assessment of the adequacy of that state remedy in comparison to what this court could afford.

Finally, turning to the issue of whether § 40-1-11 is plain, speedy and efficient, the court concludes that this statutory mechanism, of itself, is sufficient. In *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1963), the Supreme Court held that a similar tax protest mechanism was sufficient to strip the federal courts of their ability to hear a challenge to a challenge to a Louisiana tax assessment. In reaching its conclusion, the Court noted that the Louisiana statutes provided that a taxpayer who sought to challenge an assessment could pay the contested amount under protest, and that the amount would be placed in an escrow account until the matter was resolved.[5] *Accord United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 328-30 (5th Cir.1979).

### 2.

■ *Appeals Subsequent to Final Assessment, 1975 Ala.Code §§ 40-18-40, 40-2-22:* Those individuals who receive a final tax assessment have another means, as provided by 1975 Ala.Code § 40-18-40, in

---

5. Under the applicable Louisiana law, the money would earn interest while in the escrow account. The fact that contested tax payments that are placed in an escrow account in Alabama do not earn interest does not mean that the taxation procedures are not plain, adequate and complete. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

882

which to attack the constitutionality of Alabama tax laws. For these individuals, a challenge can be lodged with the circuit court using the procedures set forth at § 40–2–22. *See Moore v. State Department of Revenue,* 447 So.2d 744, 745–46 (Ala.Civ.App.1983), *cert. denied,* 447 So.2d 747 (Ala.1984).

When a taxpayer files a return, the amount of taxes listed as due is presumed to be the amount actually due. § 40–18–40. This listed return, however, is only conditional; it is the Department of Revenue that makes the final assessment. *Alabama Education Association v. Grayson,* 382 So.2d 501, 504 (Ala.1980). Should the Department of Revenue disagree with the amount listed by the taxpayer, it sends a notice to the taxpayer and sets a hearing date.[6] After the hearing, the department makes a determination as to the final assessment of the taxes due and notifies the taxpayer. § 40–18–40. The taxpayer then has 30 days from the date of the department's mailing of the final assessment notice to commence an appeal in circuit court. *Id. See* § 40–2–22.[7] Should the taxpayer not avail herself of this appellate review, no further judicial review is possible. *Moore, supra; State v. Woodroof,* 46 So.2d 553 (Ala.1950).

Should the taxpayer who has received a final assessment utilize the § 40–2–22 appeals process, it is clear she can raise the plaintiffs' claims during the appeal: "The [circuit] court shall ... decide all questions both as to the legality of the assessment and the amount thereof." *See Moore,* 447 So.2d at 747. The Alabama courts have, on several occasions, been amenable to addressing directly challenges to Alabama tax statutes and practices that were brought pursuant to this statutory process and were premised on federal constitutional grounds. *See Rite Tile Co. v. State,* 278 Ala. 100, 176 So.2d 31 (1965) (commerce clause); *Department of Revenue v. Mid-*

*stream Fuel Service, Inc.,* 521 So.2d 75, 80 (Ala.Civ.App.1988) (commerce and import-export clauses); *State v. Colonial Pipeline Co.,* 471 So.2d 408 (Ala.Civ.App.1984) (equal protection clause), *writ quashed as improvidently granted,* 471 So.2d 413 (Ala.1985), *appeal dism'd,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 276 (1985).

On two prior occasions, this court has had the opportunity to determine whether this state procedure for challenging a final tax assessment was plain, speedy and efficient. In both cases, the court concluded that they were. *Lasker Boiler and Engineering Corporation v. Hamm,* 216 F.Supp. 74 (M.D.Ala.1963) (Johnson, C.J.), *aff'd,* 328 F.2d 429 (5th Cir.1964), concerned an assessment of a use tax by the Alabama commissioner of Revenue against a corporation that had sold goods to the United States. Arguing that the tax enforcement and collection would violate the sovereign immunity of the United States, the corporation sought to restrain the tax collection. This court held that the procedures now codified at § 40–2–22 are sufficient to satisfy the Tax Injunction Act's requirement that a state provide a "plain, speedy, and efficient remedy." *Id.,* at 76. This court rejected the corporation's argument that, because § 40–2–22 precluded any form of state judicial review if a party filed an untimely appeal, the section did not meet the Act's prerequisites, observing that, "[f]ailure on the part of this taxpayer—assuming the action of the Circuit Court was correct in holding that the appeal was not timely filed—to avail itself of this State remedy does not mean that the State of Alabama has no 'plain, speedy and efficient remedy' in such instances." *Id.*

Fifteen years later, Alabama's remedial structure for challenges to state tax assessments came under scrutiny a second time in *Advertiser Co. v. Wallace,* 446 F.Supp. 677 (M.D.Ala.1978) (Johnson, C.J.). In this action, a newspaper company chal-

6. Generally the department has three years from the taxpayer's filing of a return in which to make an assessment. *See* § 40–18–45(a); *Alabama Education Association,* 382 So.2d at 504.

7. In order to perfect an appeal, the taxpayer is required either to pay the assessment due before the taxes become delinquent, or to execute a supersedeas bond at twice the amount of the outstanding taxes owed the state.

lenged the imposition of various sales and lease tax assessments as having been imposed solely as retaliation for critical newspaper articles written about former Governor Wallace and his family. Once again, this court invoked the Tax Injunction Act to conclude that the Alabama statutory provisions were such as to constitute a "plain, speedy and efficient remedy." *Id.,* at 680–81. The court rejected the plaintiffs' arguments that a state court could not accord them the full scope of relief that they might otherwise obtain in federal court:

> Neither the judicial decisions nor § 1341 requires that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in the federal courts. Section 1341 merely requires that the state remedy be "plain, speedy and efficient."

*Id.,* at 681 (*quoting Bland v. McHann,* 463 F.2d 21 (5th Cir.1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973)).[8]

It is apparent that, by utilizing the procedure set forth in § 40–2–22, those individuals who receive a final tax assessment may be able to obtain more relief than they might otherwise be able to obtain in this court. Not only can these individuals obtain a declaration as to the legality of a challenged tax, they can also obtain reimbursement for funds that were obtained illegally. The fact that individuals who received a final tax assessment prior to the date *Davis v. Michigan Department of Treasury,* — U.S. ——, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), was decided failed to make a legal challenge on the basis of

its holding does not militate against the sufficiency of the proceedings. *See Lasker Boiler and Engineering Corporation,* 216 F.Supp. at 76.

### 3.

■ *The Mistake or Error Statute, 1975 Ala. Code § 40–18–43:* For those individuals who do not receive a final tax assessment, there is yet another mechanism to challenge the Alabama tax scheme.[9] Section 40–18–43 of the 1975 Alabama Code allows individuals who have mistakenly paid an income tax greater than that which is due to the state to obtain refunds, with interest, should they apply within three years of the date of payment. Under this provision, an individual who cannot obtain relief from the Department of Revenue may institute a mandamus proceeding in the circuit court of Montgomery county to require the department of revenue to certify the refund due back to the taxpayer. This mechanism is available to taxpayers, regardless of whether they originally paid their taxes under protest.

Moreover, it appears that, contrary to the plaintiffs' contentions, the Alabama courts would be more than willing to recognize constitutional challenges under this provision. *Cf. Alabama Precast Products, Inc. v. Boswell,* 357 So.2d 985 (Ala.1978) (on appeal of mandamus proceeding for refund of sales taxes paid, merits of taxpayers' claims, including commerce clause implications, were considered). The Alabama courts, recognizing that the purpose of this statute "is to permit of a correction of the amount of the tax where the tax has been erroneously paid,"[10] have taken a

8. To the extent that the plaintiffs seek refuge in the Eleventh Circuit's holding in *Williams v. City of Dothan,* 745 F.2d 1406 (11th Cir.1984), the court finds no support for their position. While *Williams* did hold that the Alabama procedures for challenging municipal improvements assessments were insufficient to bar the exercise of federal jurisdiction, the procedures under scrutiny were markedly different from those at issue here. Of utmost importance, the Alabama procedures at issue in *Williams* allowed a circuit court to determine only whether the assessment reflects increased value to property; they did not allow for the plaintiffs' challenges that the city government had acted in a

discriminatory fashion. *Id.,* at 1412. Significantly, § 40–2–22 explicitly provides for the circuit court to review the legality of any challenged assessment.

9. For individuals who receive a final assessment, a challenge pursuant to § 40–2–22 is the exclusive means by which to raise a legal challenge. *Hamm v. Harrigan,* 278 Ala. 372, 178 So.2d 529 (1965), *cert. denied,* 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966).

10. *State Department of Revenue v. Fuqua Industries, Inc.,* 48 Ala.App. 1, 261 So.2d 410, 414 (1972) (*quoting State v. Brown,* 254 Ala. 215, 48 So.2d 36, 39 (1950)).

very practical approach in assessing claims under this statute to ensure that a taxpayer is treated equitably. *See State v. Brown*, 254 Ala. 215, 48 So.2d 36 (1950) (invoking notions of equity and concluding that refund was due); *State Department of Revenue v. Fuqua Industries, Inc.*, 48 Ala.App. 1, 261 So.2d 410, 415 (1972) (analogizing the analysis under § 40–18–43 to the decision in *Outlaw v. State*, 244 Ala. 153, 12 So.2d 388, 391 (1943), in which the Alabama Supreme Court held that "if any part of the assessment is illegal, it must be returned"). As the Alabama Supreme Court explained in addressing an earlier, similar statutory provision:

> The statute is intended to provide the taxpayer, who by mistake has paid taxes he ought not to have paid, a speedy, inexpensive remedy to reclaim the money from the state and county treasury into which it has passed. It is the successor of preceding statutes having a common object—the promotion of justice and equity between the state and county and the taxpayer. If by mistake, whether of law or of fact, the state or county has, through the medium of taxation, received money of the taxpayer to which it was not entitled, ex equo et bono, it is but natural right and justice that the mistake should be corrected and the money refunded.

*Bigbee Fertilizer Co. v. Smith*, 186 Ala. 55, 65 So. 37, 39 (1914) (*quoting White v. Smith*, 117 Ala. 232, 23 So. 525 (1898)).

Perhaps the best example of the statute's potential scope can be witnessed through reference to *Smith v. Tennessee Coal, Iron and R. Co.*, 68 So. 865 (Ala. 1915), in which a corporation sought a refund for taxes paid under Alabama state law that had been subsequently invalidated by the United States Supreme Court. After concluding that "[t]he money was paid and collected under what purported to be a valid statute, but which was, in law, not valid" and that "hence it was paid under a 'mistake or error' ... and was within the meaning of the statute," the Alabama Supreme Court held that a writ of mandamus should issue compelling the payment of tax refunds to the corporation. 68 So. at 866. *See also Sparks v. Louisville & Nashville Railroad Co.*, 277 Ala. 25, 166 So.2d 865 (1964); *Turner v. Anniston Electric & Gas Co.*, 200 Ala. 89, 75 So. 465, 466 (1917).

Thus, it appears that Alabama taxpayers have yet a third means in which to raise a constitutional challenge to the manner in which pensioner income is taxed. And, as with the process under § 40–2–22, the relief that the taxpayers may receive is greater than that available to them in federal court. Moreover, as with § 40–2–22, the fact that certain taxpayers may not have timely availed themselves of their opportunities to seek a refund under this provision in no way affects the determination as to the adequacy of the procedure. *See Winicki v. Mallard*, 783 F.2d 1567, 1571 (11th Cir.), *cert. denied*, 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986); *Ford Motor Credit Co. v. Louisiana Tax Commission*, 440 F.2d 675, 676–77 (5th Cir. 1971); *Lasker Boiler and Engineering Corp., supra.*

### B.

The plaintiffs argue that, even though state procedures allow for constitutional challenges, the procedures are nonetheless inadequate. The court now turns to these additional arguments.

### 1.

▬ The plaintiffs contend that, because each individual class member will be required to file a challenge to her tax assessment, the Alabama statutory framework is inefficient, and that this court should permit a more efficient class action challenge to go forward. This argument was explicitly rejected by the Eleventh Circuit in *Waldron v. Collins*, 788 F.2d 736 (11th Cir. 1986).[11] The *Waldron* plaintiffs consisted of a class of federal retirees in Georgia

---

**11.** *See also Bland v. McHann*, 463 F.2d 21, 28 & n. 24 (5th Cir.1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973); *Coleman v. McLaren*, 631 F.Supp. 749, 762 (N.D.Ill.1985),

*aff'd*, 796 F.2d 477 (7th Cir.1986) (table); *Bunte Candies, Inc. v. Cartwright*, 508 F.Supp. 229, 233–34 (W.D.Okla.1981) (collecting cases).

who alleged that, because federal retirement benefits were taxed whereas Georgia retiree's benefits were not, Georgia's tax policies were violative of the equal protection clause and 4 U.S.C.A. § 111. The district court, after finding that Georgia did not permit class action challenges to tax matters, held that the Tax Injunction's proscriptions were inapplicable. The Eleventh Circuit reversed, holding that the mere fact that a state does not provide for a classwide challenge does not, of itself, require a finding that the state procedures are inadequate within the meaning of the Tax Injunction Act. *Id.,* at 738.

In any event, whether the plaintiffs proceed in state court as individuals or on a class basis, the requested relief generally will benefit not only them but all other persons subject to the challenged tax. *See Ex parte Jim Dandy,* 286 Ala. 295, 239 So.2d 545, 554 (1970) (determination rendered subsequent to taxpayer paying allegedly illegal taxes under protest "is in substance and effect the same as a declaratory judgment"); *Glass v. Prudential Insurance Co.,* 22 So.2d at 18 (same). To be sure, the plaintiffs allege a variety of different factual circumstances, each challenging the differential treatment that Alabama accords one form of pension income relative to other types of retirement income. However, it appears that a successful challenge by any individual who receives a particular form of annuity can substantially establish the plaintiffs' position for all other individuals receiving benefits in that category. Thus, the fact that the plaintiffs may not be able to avail themselves of a class action mechanism is insufficient to render the Alabama procedures for challenging income taxation inadequate.

Finally, the court observes that the Alabama courts have recognized challenges to Alabama tax procedures that have been brought as a class action. *See, e.g., Sims v. White,* 522 So.2d 239 (Ala.1988) (successful class action challenge to county's procedure of assessing ad valorem taxes in which refunds with interest were ordered). Indeed, in a state court proceeding filed contemporaneously with this action by the same plaintiffs raising the same challenges to the manner in which Alabama taxes retiree benefit income, a plaintiff class has already been conditionally certified.[12]

### 2.

Next, the plaintiffs point to those provisions in § 40–2–22 and § 40–23–87 that expressly prohibit state courts from issuing injunctive relief that interferes with the collection of taxes due. However, the Alabama Supreme Court has, on occasion, entertained challenges seeking injunctive relief, and has affirmed orders of the circuit court enjoining state tax practices. *See Robert Burton Associates, Ltd. v. Eagerton,* 432 So.2d 1267 (Ala.1983) (plaintiffs entitled to declaratory and injunctive relief as a result of successful state constitutional challenge to §§ 40–25A–1 through –20); *Alabama Bd. of Optometry v. Eagerton,* 393 So.2d 1373 (Ala.1981) (entertaining declaratory request challenging on constitutional grounds differential treatment in the manner in which sales taxes are applied to optometrists); *Hamm v. Proctor,* 281 Ala. 54, 198 So.2d 782 (1967) (per curiam) (affirming injunction prohibiting collection of sales taxes from dental laboratories); *Haden v. McCarty,* 275 Ala. 76, 152 So.2d 141 (1963) (enjoining sales taxes). *See also Advertiser Co. v. Wallace,* 446 F.Supp. at 680 ("Although several statutes prohibit a state court from enjoining the collection of any tax, the Alabama courts have long recognized an exception to this rule where, coupled with the illegality of the tax, there is a 'recognized ground of equitable jurisdiction' ").

### III.

Accordingly, the court concludes that the Alabama state courts can provide all the relief that can be obtained in this forum,

---

12. To the extent that the plaintiffs contend that the proceedings in state court might involve a greater expenditure of resources in order to obtain the relief sought, this argument "speaks not to the lack of such a remedy in state court but rather to the taxpayers' own cost-benefit analysis of the state remedy available." *Winicki v. Mallard,* 783 F.2d at 1571.

and that the manner in which the relief can be obtained is plain, speedy and efficient. Thus, consistent with the principal purpose of the Tax Injunction Act, the court concludes that this action must be dismissed.

A separate judgment will be entered.

DONE.