Because this case presents a question of first impression that potentially involves the payment of approximately $20,000,000 from the Special Education Trust Fund of the State of Alabama, the important issues that have been raised in this petition should be addressed by the highest Court in this state.
The people of Alabama, in the Constitution of Alabama of 1901, declared: "That the State of Alabama shall never be made a defendant in any court of law or equity." Section 14 (emphasis added). This Court has held that § 14 prevents not only an action against the state, but also an action against its officers and agents in their official capacities, when a result favorable to the plaintiff would directly affect a property right of the state. DeStafney v. University ofAlabama, 413 So.2d 391 (Ala. 1981); Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971); Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963). In Ford Motor Co. v. Department ofTreasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the United States Supreme Court held: "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."
Based upon the understandable, intelligible, lucid, comprehensible, discernible, plain, obvious, unambiguous, unequivocal, explicit, definite, unmistakable, indisputable, unquestionable, and incontrovertible wording of § 14 of the Constitution, as consistently interpreted by this Court, I must conclude that this is an action against the state, seeking as a remedy funds from the state treasury.
The state timely raised the defense of sovereign immunity under § 14 by a motion to dismiss. The Court of Civil Appeals did not address this constitutional issue. It merely relied onThorn v. Jefferson County, 375 So.2d 780 (Ala. 1979). Thorn
involved an action against a county seeking a refund of ad valorem taxes. A county has no sovereign immunity. NeitherThorn, nor the case that it relied on, Graves v. McDonough,264 Ala. 407, 88 So.2d 371 (1956), is authority for allowing a class action against the state. In Graves, Chief Justice Livingston, writing for the Court, specifically noted that the attorney general was "not insisting that this is a suit against the state in violation of Section 14 of the Constitution."264 Ala. at 409, 88 So.2d at 373. In the case at issue, the state is insisting that this action is barred by § 14.
This Court can no more permit an action against the state, or an official of the state, when a result favorable to the plaintiff would affect a property right of the state, than we can deny parties to litigation a trial by jury, if they had the right to trial by jury at common law. The people, by *Page 1071 
their Constitution, have denied us that right.
There can be no question that a refund of approximately $20,000,000 from the slate treasury would affect a property right of the state. Therefore, in this case, the State of Alabama was made a defendant in violation of § 14 of the Alabama Constitution, and its motion to dismiss should have been promptly granted, unless this constitutional provision (§ 14) violates the United States Constitution.
In determining whether § 14 violates the United States Constitution, what is our standard of review? Justice Almon wrote for a unanimous Court in White v. Reynolds Metals Co.,558 So.2d 373, 375 (Ala. 1989), cert. denied, Reynolds MetalsCo. v. Sizemore, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282
(1990):
 "Although the Supremacy Clause, U.S. Const. Art. VI, cl. 2, binds 'the judges in every state' to abide by the United States Constitution, 'any thing in the Constitution or laws of any state to the contrary notwithstanding,' we are also sworn to 'support the Constitution of the United States, and the Constitution of the State of Alabama.' Ala. Const. 1901, Art. XVI, § 279. It is therefore our duty to support both, if that be possible, before we conclude that one violates the other."
(Emphasis added.)
In my opinion, the Court of Civil Appeals, 611 So.2d 1064
(1992), and the majority of this Court as well, by quashing the writ, have ignored the duty to support the Alabama Constitution, if that can be done without violating the United States Constitution.
The Court of Civil Appeals relied on James B. Beam DistillingCo. v. Georgia, ___ U.S. ___, 111 S.Ct. 2439, 115 L.Ed.2d 481
(1991) (hereinafter Beam v. Georgia), and Davis v. MichiganDepartment of Treasury, 489 U.S. 803, 109 S.Ct. 1500,103 L.Ed.2d 891 (1989), in holding that the state was required to provide refunds to the affected taxpayers in this case. After carefully examining these two cases, however, I find it clear that this reliance was misplaced. In Davis v. Michigan, Davis pursued the administrative remedies that were available to him to obtain a refund of taxes; and the State of Michigan conceded the refund issue: "The State having conceded that a refund is appropriate in these circumstances, . . . to the extent appellant has paid taxes pursuant to this invalid tax scheme, he is entitled to a refund." 489 U.S. at 817,109 S.Ct., at 1508-09. In the petition before this Court, the state vehemently denies that it should be required to provide refunds in this class action. In Beam v. Georgia,[1] the United States Supreme Court issued four opinions in which six Justices agreed that the ruling in Bacchus Imports, Ltd. v. Dias, 468 U.S. 263,104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), should apply retroactively to claims arising on facts antedating that decision. Three Justices held that retroactive application ofBacchus was not appropriate. However, the opinions of the majority in Beam v. Georgia did not decide the issue of which remedies were to be applied under the new rule. In the opinion written by Justice Souter, the following statements appear:
 "Subject to possible constitutional thresholds, see McKesson Corp. v. Florida Alcoholic Beverages and Tobacco Div., 496 U.S. [18], 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the remedial inquiry is one governed by state law, at least where the case originates in state court. See American Trucking Assns., Inc. v. Smith, 496 U.S. [167, 210-11], 110 S.Ct. 2323 [2348], 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting). But the antecedent choice-of-law question is a federal one where the rule at issue itself derives from federal law, constitutional or otherwise. See Smith, supra, at [177 n. 8], 110 S.Ct., at [2330-31 n. 8] (plurality *Page 1072 
opinion); cf. United States v. Estate of Donnelly, 397 U.S. 286, 297, n., 90 S.Ct. 1033, 1039, n., 25 L.Ed.2d 312 (1970) (Harlan, J., concurring)."
___ U.S. at ___, 111 S.Ct. at 2443.
 "[N]othing we say here precludes consideration of individual equities when deciding remedial issues in particular cases.
". . . .
 "The grounds for our decision today are narrow. They are confined entirely to an issue of choice of law: when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. We do not speculate as to the bounds or propriety of pure prospectivity.
 "Nor do we speculate about the remedy that may be appropriate in this case; remedial issues were neither considered below nor argued to this Court, save for an effort by petitioner to buttress its claim by reference to our decision last Term in McKesson. As we have observed repeatedly, federal 'issues of remedy . . . may well be intertwined with, or their consideration obviated by, issues of state law.' Bacchus, 468 U.S., at 277, 104 S.Ct., at 3058. Nothing we say here deprives respondent of his opportunity to raise procedural bars to recovery under state law or demonstrate reliance interests entitled to consideration in determining the nature of the remedy that must be provided, a matter with which McKesson did not deal."
___ U.S. at ___, 111 S.Ct., at 2448. (Emphasis added.)
In Melof v. Hunt, 718 F. Supp. 877 (M.D.Ala. 1989), a case involving all of the defendants in this case and at least three of the remaining plaintiffs in this case, it was judicially determined (1) that the relief sought, as in the present case, was against the state; (2) that Ala. Code 1975, § 40-1-11, repealed by "The Alabama Taxpayers' Bill of Rights and Uniform Revenue Procedures Act," Ala. Acts 1992, No. 92-186, § 80, effective October 1, 1992 (conferring a right to recover taxes paid under protest); Ala. Code 1975, § 40-18-40, rewritten by amendment, Act 92-186, § 53, effective October 1, 1992, and §40-2-22, repealed by Act 92-186, § 80 (conferring a right of appeal subsequent to final assessment of tax); and Ala. Code 1975, § 40-18-43, repealed by Act 92-186, § 80 (conferring a right to recover taxes paid by mistake or error) provided taxpayers with state remedies that were "plain, speedy, and efficient" means by which they could raise constitutional challenges to income tax assessments; and (3) that the inability of the plaintiffs to avail themselves of a class action mechanism was insufficient to render the "protest statute," the statutory provisions conferring a right of appeal subsequent to a final assessment, or the "mistake or error statute," procedurally inadequate for challenging income taxation. This judgment was not appealed; therefore, had the doctrine of res judicata been raised as a defense in this case, the federal court judgment would have barred relitigation of these issues in state court. Imperial Crown Marketing Corp. v.Wright, 560 So.2d 1025 (Ala. 1989); Higgins v. Henderson,551 So.2d 1050 (Ala. 1989). Although res judicata was not raised as a defense, Judge Thompson's legal conclusions are applicable to the issues before this Court.
With respect to his finding that the statutory remedies that were available to Alabama taxpayers were adequate to comply with the United States Constitution, Judge Thompson, in his well-reasoned and well-written opinion, wrote:
 "The basic principle underlying the doctrines [the interrelated doctrines of comity as constitutionally established and as statutorily set forth in the Tax Injunction Act] is that, with rare exceptions, a federal court should not interfere with a state's manner of collecting taxes —the primary source of funding for a state's continued operations — unless the court is convinced that the state does not offer to the plaintiffs state remedies that are 'plain, speedy, and efficient.' [28 U.S.C.] § 1341. . . . 'The scrupulous regard for the rightful independence of state governments which should at all time actuate the federal courts, and a proper reluctance *Page 1073 
to interfere by injunction with their fiscal operations, require that such relief be denied in every case where the asserted federal right may be preserved without it.' [Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 108, 102 S.Ct. 177, 182, 70 L.Ed.2d 271 (1981).]
". . . .
 "A state remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise her constitutional objections to the tax. Alabama provides several means by which a taxpayer can raise the constitutional challenges the plaintiffs seek to make in this court. The court is therefore convinced that these provisions are sufficient to conclude that the plaintiffs must bring their challenges in state, rather than federal, court."
Melof v. Hunt, 718 F. Supp. at 880. (Citation omitted.) Judge Thompson then discussed the three remedies that were available to taxpayers in Alabama: the "protest statute," Ala. Code 1975, § 40-1-11, repealed; the statutes conferring the right of appeal subsequent to a final tax assessment, Ala. Code 1975, §40-18-40, rewritten, and § 40-2-22, repealed; and the "mistake or error statute," Ala. Code 1975, § 40-18-43, repealed; and determined that each of these three remedies was a plain, speedy, and efficient remedy. Melof v. Hunt,718 F. Supp. at 880-84. I agree with Judge Thompson's legal reasoning, and I adopt that portion of his opinion as part of this dissent.
There is no evidence in this case that any of the plaintiffs elected to pursue the remedy that was afforded by § 40-1-11. There is evidence (contained in the deposition of Commissioner Sizemore) that if a taxpayer had not included federal retirement income as part of his or her taxable Alabama income, the state had not pursued, and would not pursue, its rights under the final assessment section of the Alabama Code to try to tax that federal retirement income. There is also evidence in the form of affidavits that three taxpayers did file something with the Department of Revenue after this action had been filed and that they were told by the Department that no action could be taken until this action had been concluded.
There was nothing to keep the plaintiffs in this action from seeking one of the three statutory remedies that were available to them prior to October 1, 1992. That, in my opinion, they had to do. If any of the taxpayers paid the tax under protest, they had the rights provided in § 40-1-11. If the uncontroverted evidence in the record is wrong and some taxpayers omitted including federal retirement income for tax purposes and the state made a final assessment including that income, then these taxpayers had a right of appeal pursuant to §§ 40-18-40 and40-2-22. If some taxpayers did not pay under protest, or appeal from a subsequent final assessment that included federal retirement income, but nonetheless paid tax on federal retirement income, then those taxpayers could have elected to proceed under the "mistake or error statute," § 40-18-43. The taxpayers are entitled to no more retrospective or prospective relief than they could have obtained under §§ 40-1-11,40-18-40, 40-2-22, and 40-18-43, or can hereafter obtain under Ala. Acts 1992, No. 92-186, which, as previously not ed, became effective on October 1, 1992. The stated purpose of the new act is to clarify and standardize the procedure in Alabama for administering the revenue laws. The basic remedies that were available to taxpayers under the old law are still available to them under the new law. Although the remedy provided by the new act, § 6(c) (conferring the right of recovery of taxes erroneously paid), is still available to the taxpayers, the new act requires that an application for a refund of taxes be filed with the Department of Revenue within three years from the date a return was filed or within two years from the date of the payment of the tax, whichever is later. Consequently, because the legislature in 1990 changed the law taxing federal retirement income to bring Alabama's income tax law into compliance with the ruling in Davis v. Michigan Department ofTreasury, supra, the affected *Page 1074 
taxpayers who have not filed an application for a refund of Alabama income tax paid on federal retirement benefits will not be able to obtain a refund for taxes paid in each of the years alleged in the complaint. This, however, has no bearing on the constitutionality of the claims against the state in this case.Beam v. Georgia, supra. Those taxpayers who did file applications for refunds under the "mistake or error statute" have a right to obtain those refunds.
The State of Alabama has provided "plain, speedy, and efficient" remedies for taxpayers who have paid, or were otherwise obligated to pay, an Alabama income tax that has been held to be unconstitutional under the United States Constitution. Section 14 of the Alabama Constitution is not unconstitutional under the Supremacy Clause of the United States Constitution, because of these plain, speedy, and efficient remedies. Therefore, in accordance with White v.Reynolds Metals Co., supra, it is this Court's duty to support § 14 of the Alabama Constitution.
On March 28, 1989, the United States Supreme Court announced its decision in Davis v. Michigan Department of Treasury, supra. The cases that were consolidated into the action that is now before this Court were filed on April 12, 14, and 17, 1989 (15 to 20 days after the Davis decision was announced). In each of these cases, the plaintiff or plaintiffs sought class certification. On April 19, 1989, the trial court certifiedMelof v. Hunt as a class action (containing one class and four sub-classes), without notice to the defendants and before the defendants had filed any defensive pleadings. An order granting conditional class certification in Rinehart v. Sizemore was granted on April 21, 1989, on two days' notice to Sizemore, before any defensive pleadings were due to be filed or were filed. Motions were filed to decertify these class actions. After examining over 1,000 pages of the record in this case, including that portion of the record that was filed in this Court on December 10, 1992, I believe that these motions should have been granted under the authority of Ex parte Blue Cross Blue Shield of Alabama, 582 So.2d 469 (Ala. 1991), and Rowan v.First Bank of Boaz, 476 So.2d 44 (Ala. 1985). However, because of the more fundamental and compelling constitutional basis for my dissent in this case, which I have previously discussed, I find it unnecessary to elaborate further on the class certification issue. The mere fact that the state did not provide a class action procedure to challenge this income tax on federal retirement benefits does not make the state tax procedures constitutionally inadequate. Waldron v. Collins,788 F.2d 736 (11th Cir.), cert. denied, 479 U.S. 884,107 S.Ct. 274, 93 L.Ed.2d 250 (1986), cited as authority by Judge Thompson in Melof v. Hunt, 718 F. Supp. at 884-85.
For the foregoing reasons, I would not quash the writ as improvidently granted. Instead, I would reverse the judgment of the Court of Civil Appeals affirming the judgment against the state, and I would remand this case for proceedings consistent with this dissent. My decision in this case is not dictated by the large amount of money involved or by the fact that that money must be paid from the Special Education Trust Fund, which provides funds for what I personally consider to be an inadequately funded educational system. Rather, my decision in this case is dictated by a process of legal reasoning consistent with my understanding of this Court's duty as recognized in White v. Reynolds Metals Co., supra.
[1] Justice Souter announced the judgment of the Court and rendered an opinion in which Justice Stevens joined. Justice White filed an opinion concurring in the judgment. Justice Blackmun filed an opinion concurring in the judgment; Justice Marshall and Justice Scalia joined that opinion. Justice Scalia filed an opinion concurring in the judgment; Justice Marshall and Justice Blackmun joined that opinion. Justice O'Connor filed a dissenting opinion, in which Chief Justice Rehnquist and Justice Kennedy joined.